IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Ameriglobe, LLC; and Bulk Lift International, LLC,<br><br>   Plaintiffs,<br><br>   v.<br><br>Independent Packaging Associates, LLC; Jeff Wiley; Sunbelt Packaging, LLC; and IPA Global Private Limited,<br><br>   Defendants. | C/A. No. 0:24-3903-CMC<br><br><br><br><br>Order Regarding Report and Recommended Ruling By Special Master |

**INTRODUCTION**

Plaintiffs Ameriglobe, LLC ("Ameriglobe") and Bulk Lift International, LLC ("Bulk Lift") (collectively, "Plaintiffs") filed this action against Defendants Independent Packaging Associates, LLC ("IPA"), Jeff Wiley ("Wiley"), Sunbelt Packaging, LLC ("Sunbelt"), and IPA Global Private Limited (collectively, "Defendants"), seeking damages and injunctive relief for patent infringement of U.S. Patent No. 8,646,973 ("the '973 Patent"), U.S. Patent No. 10,577,155 ("the '155 Patent"), U.S. Patent No. 11,192,693 ("the '693 Patent"), U.S. Patent No. 11,760,540 ("the '540 Patent"), and U.S. Patent No. 11,964,798 ("the '798 Patent") (collectively, the "Asserted Patents") on July 10, 2024. Dkt. N0. 1. Defendants answered and asserted counterclaims for declaratory judgment of non-infringement, invalidity, and unenforceability. Dkt. No. 24. An Amended Complaint was filed October 8, 2024. Dkt. No. 35. Defendants answered. Dkt. Nos. 37, 42, 45, 57.

On December 10, 2025, the court appointed Special Master Timothy Barber pursuant to Federal Rule of Civil Procedure 53 to oversee claim construction and other pretrial and posttrial

matters in this case. Dkt. No. 103. The Special Master conducted a *Markman* hearing on January 21, 2026. Dkt. Nos. 105, 106 (transcript). On February 25, 2026, the Special Master filed his Report and Recommended Ruling ("Report"). Dkt. No. 107. Defendants filed objections and a request for clarification. Dkt. No. 108). Plaintiffs also filed objections. Dkt. No. 109. Both parties filed replies to the opposing objections. Dkt. Nos. 110, 112. On April 23, 2026, the Special Master filed a supplement/clarification to his Report. Dkt. No. 113. The parties were afforded an opportunity to respond to the supplement. Plaintiffs filed objections (Dkt. No. 114), but Defendants did not.

## STANDARD OF REVIEW

**Review of Report**. "In acting on a master's order, report, or recommendations, the court must give the parties notice and an opportunity to be heard; may receive evidence; and may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions." Fed. R. Civ. P. 53(f)(1). The court must decide *de novo* all objections to findings of fact and conclusions of law made or recommended by the Special Master. *Id.* at (f)(3), (4).

The Fourth Circuit has held, albeit in the procedural posture after a Magistrate Judge's Report and Recommendation, the district court should consider new *arguments* relating to existing issues raised by a party in its objections to a Report and Recommendation, but need not consider new *issues* or *claims* raised. *See Samples v. Ballard*, 860 F.3d 266, 272-73 (4th Cir. 2017); *JTH Tax, LLC v. Shahabuddin*, No. 2023 WL 3002746, at *10 (4th Cir. April 19, 2023) (reiterating a district court needn't consider new issues raised for the first time in objections, even if it must consider new arguments relating to existing issues… "an 'issue' corresponds to a 'ground for relief' while an 'argument' is a 'position taken in support of or against' that ground."). A district

2

court's decision to admit new evidence after a Report and Recommendation is reviewed for abuse of discretion. *Doe v. Chao*, 306 F.3d 170, 183 (4th Cir. 2002).[1]

The court recognizes District Court authority from around the country finding it improper to raise new arguments in objections to a Special Master's report. *See Net2Phone, Inc. v. Ebay, Inc.,* No. CIV.A. 06-2469 KSH, 2008 WL 8183817, at *4 (D.N.J. June 26, 2008) (holding de novo determination "does not require the reviewing court to hear new arguments," because "systematic efficiencies would be frustrated" and it would be fundamentally unfair to permit a litigant to set its case in motion . . . and – having received an unfavorable recommendation – shift gears before the reviewing judge"); *see also Masimo Corp. v. Apple Inc.*, No. SACV2000048JVSJDEX, 2022 WL 18285003, at *1 (C.D. Cal. Nov. 16, 2022) (a party "cannot raise entirely new arguments for the first time on an objection to a Special Master's Report."); *World Triathalon Corp. v. Dunbar*, 539 F. Supp. 2d 1270, 1278 (D. Haw. 2008) (same); *Nilssen v. Motorola, Inc.,* 2002 WL 206007, at *11 (N.D. Ill. Feb. 8, 2002) (The proper time for Nilssen to assert arguments and allegations . . . was in his response to Motorola's motion, not during his objections to the findings of the Special Master, long after the motions have been fully briefed and filed.").

**Claim Construction**. The construction of a patent, including terms of art within its claim, is exclusively within the province of the court as a question of law. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). "It is a bedrock principle of patent law that the claims

---

[1] The court notes review of a Magistrate Judge's Report and Recommendation is governed by the Magistrate Judge Act, 28 U.S.C. § 636, while review of the Special Master's Report is controlled by Rule 53. However, the court finds *Doe v. Chao* consistent with Rule 53's direction that the District Judge may receive evidence after a Special Master's Report.

of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). The words of a claim are generally given their ordinary and customary meaning – the meaning the term would have to a person of ordinary skill in the art ("POSITA") at the time of the invention. *Id.* at 1313. The POSITA reads the claim terms not only in the context of the particular claim in which the term appears, but in the context of the entire patent, including the specification. *Id.* The specification is highly relevant to the claim construction analysis and is usually dispositive: "it is the single best guide to the meaning of a disputed term." *Id.* at 1315. However, while claim terms are understood in light of the specification, a claim construction must not import limitations from the specification into the claims. *Deere & Co. v. Bush Hog, LLC,* 703 F.3d 1349, 1354 (Fed. Cir. 2012).

## DISCUSSION

### 1. *Plaintiffs' Objections*

#### a. *Straightness*

##### i. Report and Recommended Ruling

The Report and Recommended Ruling determined "portion" or "portions" should be given their plain and ordinary meaning, which is "part of a whole." Dkt. No. 107 at 4. As for "side(s)", the Report construes this term to mean "one or more of the straight-line segments that together define the bag bottom." *Id.* at 5. The Special Master reached this conclusion because the specification makes numerous references to the shape of the bag bottom, each of which is a polygon, and each of the figures that illustrate the claimed invention depict polygons, which is a closed plane figure bounded by straight sides. *Id.* at 4. He determined any citations to a circular bag bottom by Plaintiffs are made with regard to prior art and the problems inherent in using a

circular bottom, which the patent teaches away from. Further, he notes curved sides could make it difficult to identify the number of sides of the bag bottom, which could raise a question regarding infringement of claims based on number of sides. *Id.*

ii.  Plaintiffs' Objections

Plaintiffs' first objection asserts the Recommended Ruling "improperly imports a 'straight' sides limitation into the claims." Dkt. No. 109 at 4. They contend the claims do not incorporate the qualifier "straight" when referring to the "side(s)" or "side portions," and the claims should be given their plain and ordinary meaning. *Id.* at 5. They explain patent claims are construed from the claim language first, read in context of the specification and prosecution history. However, they note, the Recommended Ruling begins with the specification, concludes only polygons are described, which they submit is not true, interprets polygons to have only straight sides, which they also submit is not true, and "then imports those limitations into the construction of the term 'side(s).'" *Id.* at 6. Plaintiffs submit the specification "expressly teaches bag-bottom shapes spanning the full range between a square and a circle" and the claims "specifically encompass both polygon and non-polygon shapes." *Id.* at 7. Many claims, for example, use language noting the bottom is a shape "neither a square nor a circle," which "captures rounded hexagons and octagons and other shapes with combinations of straight and rounded boundary portions." *Id.* In addition, they contend the Special Master improperly relied on the patent figures or drawings instead of considering them illustrative and not definitional. *Id.* at 7. Plaintiffs assert the specification does not clearly define "side(s)" or disclaim curved boundaries, and note there is no assertion the patentee acted as its own lexicographer to restrict "side(s)" to straight line segments. *Id.* at 8. The discussion of circular bag bottoms in prior art is not a "clear and unmistakable disclaimer of curved

boundaries or all non-straight sides." *Id.* at 9. Finally, Plaintiffs argue concerns about the ability to count sides cannot justify narrowing claims, and the Report's reliance on *International Rectifier* for the definition of a polygon is misplaced because the claim term in that case was "polygonal" and the claim language and intrinsic evidence was different. *Id.* at 10.

iii.  Defendants' Reply

Defendants responded, disagreeing with Plaintiffs' objections. Dkt. No. 112. They contend the ordinary meaning of "side(s)" must be read in the context of this patent, and the question is what a POSITA would understand the term to mean within the context of the intrinsic record as a whole. *Id.* at 5. They assert the Special Master's construction of "side(s)" is correct: the plain meaning of "side(s)" is one of the straight-line segments that together define the boundary or outline of the bag bottom. *Id.* at 6. Defendants argue the claims, when read in view of the specification, do not permit the "expansive construction proposed by Plaintiffs," but rather confirm that "side(s)" require straight-line segments. *Id.* They assert the Special Master properly relied on the consistent representation of polygons and straight-line segments in the figures of the patents and in every embodiment disclosed in the specification. Defendants note Plaintiffs "cannot identify any support for non-straight sides in the intrinsic record that is not drawn from the disclaimed prior art." *Id.* at 7.

In addition, they contend Plaintiffs' proposed construction would allow the patent to claim more than was actually invented: if "sides" is construed to encompass curved or rounded boundaries, the "patent would claim subject matter the patentee never conceived of and never described," against Federal Circuit precedent. *Id.* at 9. Defendants argue the prosecution history confirms "sides" must be straight such that a POSITA reading the prosecution history would not

6

understand "sides" to include non-straight sides. Further, the patentee's statements in the prosecution history disclaim rounded "sides," and the patentee stated the invention is not round. *Id.* at 11, 13. They argue the specification disavows non-straight sides because it describes a feature of the invention (straight sides) and criticizes other products that lack that feature. *Id.* at 14. They assert the specification includes an explicit disavowal of round sides, and an implicit disavowal through the "8 stops and turns" discussion as well as through disparagement of prior art. *Id.* at 14-15.

### iv.  Court's Analysis

Claim construction requires determination of how a POSITA would understand a claim term in the context of the entire patent, including the specification. *Trs. of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1362 (Fed. Cir. 2016). The analysis begins with the claim language, read in view of the specification. However, the specification cannot be used to import a limitation into the claim term "despite no clear and unmistakable disclaimer of the claim scope." *Id.* at 1368. It is "improper to consult the written description and prosecution history as a threshold step in the claim construction process, before any effort is made to discern the ordinary and customary meanings attributed to the words themselves." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1320 (Fed. Cir. 2005).

Here, the claims do not specify whether the sides must be straight or non-straight/curved. Many claims include a limitation only that the bottom shape is "neither a square nor a circle." *See, e.g.*, Dkt. No. 93-4 at 21 (155 patent, cl. 22(c)). Neither does the specification redefine "side(s)" to be straight or disclaim curved sides, and there is no assertion the patentee acted as its own lexicographer to establish straight line segments. The specification teaches away from a fully

7

circular bottom, as well as a square bottom, but does not limit the patented bags to straight sides only. Although the court acknowledges the specification, including preferred embodiment and figures therein, describes and shows a polygon, specifically an octagon, with straight sides, the court cannot import this limitation into the claim language when it otherwise does not appear there. *Phillips*, 415 F.3d at 1320 ("[R]eading a limitation from the written description into the claims" is "one of the cardinal sins of patent law."). Further, the specification also teaches the present invention "has multiple sides" and "would have a shape other than the current square or round shape of conventional bulk bags," and notes the proposed invention provides "a more natural rounding to the bag base." Dkt. No. 1-1 ('973, 2:56-58, 4:1-6).

In this case, the words of the claims themselves do not include a qualifier of "straight" side(s), and there is no disavowal of non-straight sides. It appears the limitation of straight sides was imported from the specification, which is disallowed by the principles of claim construction. Accordingly, the court finds the plain and ordinary meaning of "side(s)" is the claim language; alternatively, "side(s)" is defined as one or more of the line segments that together define the bag bottom. Side(s) can be straight or non-straight.

      b.   *"Shape of Bottom has Rounding"*

      i.   Report and Recommended Ruling

The Special Master found the term "shape of the bottom has rounding," as utilized in claims 18, 19, and 20 of the '798 patent, to be indefinite. Dkt. No. 107 at 11-12. He reasoned "side(s)" was construed to include straight line segments only, and "has rounding" is contrary to the definition of the sides being straight. *Id.* at 11. The claims eliminate using a circular bottom and

8

the specification provides numerous references that teach a POSITA away from a circular bottom. He further notes the word "rounding" only appears once in the specification. *Id.*

### ii. Plaintiffs' Objections

Plaintiffs object, and contend the Report's finding that the phrase "the shape of the bottom has rounding" is indefinite is incorrect and contrary to federal circuit law. Dkt. No. 109 at 12. They assert the Report finds claim language "has rounding" inconsistent with straight sides is a direct product of the Report's "threshold error in its construction of the term 'side(s).'" *Id.* Because the court should avoid constructions that create internal contradiction or invalidate claim language where the intrinsic record does not compel that result, narrowing constructions that create invalidity or contradiction are disfavored. Nothing in the claim language or intrinsic record requires construing "side(s)" as straight line segments, and adopting that construction renders certain dependent claims internally contradictory. Therefore, Plaintiffs argue, the independent claims should not be construed to require straight sides. *Id.* at 13. In addition, they note "rounding to the bag base" is provided for in the specification and it is clear the bottom shape can have rounding but cannot be a full circle based on the claim language. *Id.* at 14. Finally, they point to a recently issued related child patent including dependent claims with the term "rounding." *Id.* at 15. Plaintiffs contend this shows the term "has rounding" is not indefinite," and the Report's indefiniteness analysis regarding that term should be rejected. *Id.*

### iii. Defendants' Reply

Defendants disagree, arguing later-added dependent claims cannot be used to change the construction from straight sides. Dkt. No. 112 at 18. These dependent claims were added over fourteen years after the original provisional application for the '798 patent. *Id.* at 24. Accordingly,

9

Defendants contend, they are entitled to diminished weight in the claim construction analysis under Federal Circuit precedent. *Id.*

### iv. Court's Analysis

As the court has determined above that "side(s)" may be non-straight, the term "shape of the bottom has rounding" is no longer contradictory to the definition of "side(s)." While claims do eliminate using an entirely circular bottom for the bag, "has rounding" does not require a fully circular bag bottom. Therefore, the specification's references teaching away from a circular bottom do not require "shape of the bottom has rounding" to be considered indefinite and it is no longer internally inconsistent. In addition, there is a reference in the specification to "rounding" that was discounted by the Special Master, seemingly because of inconsistency with his definition of straight sides. Dkt. No. 1-1 at 15 ('973 2:56-58) ("The proposed invention in this patent is attempting to work with natural forces by providing a more natural rounding to the bag base.").

Accordingly, the court finds "the shape of the bottom has rounding" is not indefinite as it is no longer contradictory to the definition of "side(s)" and is accounted for in the specification.

### c. *Supplemental Expert Declaration*

Plaintiffs' final objection concerns the supplemental expert declaration of Philippe Combier (Dkt. No. 95-1), filed with their responsive claim construction brief. Defendants assert Plaintiffs submitted a supplemental declaration by their expert Combier outside the time allowed by the Scheduling Order. On October 30, 2024, the court entered the original Scheduling Order in this case, which provided the parties were to exchange proposed claim constructions, including identification and written reports by experts, no later than July 11, 2025. Dkt. No. 43 at ¶ 2(d). Plaintiffs did not include an expert report regarding claim construction, but Defendants did.

10

However, Plaintiffs requested the court allow them to submit a rebuttal expert report to refute Defendants' proposed construction. Dkt. No. 69 at 3, 5, 10-11. The court granted this request, and allowed Plaintiffs until September 12, 2025, to file a rebuttal expert report, limited to rebutting the expert report already served by Defendants. Dkt. No. 73. The court entered an Amended Scheduling Order on September 9, 2025, reflecting this and updated deadlines. Dkt. No. 75. Plaintiff timely identified Philippe Combier as their rebuttal expert witness, and certified a written report was served on opposing counsel. Dkt. No. 76.

The operative scheduling order at all times noted the parties were to file opening and responsive *Markman* briefs, "and any supporting materials, including expert declarations." Per the Amended Scheduling Order, responsive *Markman* briefs were due November 19, 2025. Dkt. No. 75 at ¶ 2(k). Plaintiffs timely filed their responsive *Markman* brief and included as an exhibit a declaration in rebuttal to Defendants' opening claim construction brief from Plaintiffs' expert, Combier. Dkt. Nos. 95, 95-1.

Defendants then filed a reply claim construction brief. Dkt. No. 97. They argue Plaintiffs' supplemental expert declaration and related arguments were improper and should be stricken. Defendants also asserted they properly raised mixed method-apparatus indefiniteness claims, contradicting one of the arguments in Plaintiffs' responsive claim construction brief. *Id.* Defendants attached a copy of Plaintiffs' responsive claim construction brief (Dkt. No. 95), and highlighted portions they contend relied on the allegedly improper supplemental expert declaration. Dkt. No. 97-1. Defendants contend Plaintiffs did not seek permission to file a supplemental declaration, and it is untimely and prejudicial. They request the court strike Plaintiffs' supplemental rebuttal expert declaration at Dkt. No. 95-1 and portions of Plaintiffs'

11

responsive claim construction brief relying on the supplemental expert declaration. Dkt. No. 97 at 8.

### i.  Report and Recommended Ruling

The Special Master noted Defendants' reply brief raising the issue of Combier's supplemental expert declaration was also filed outside the time set forth in the scheduling order, which did not contemplate reply claim construction briefs, and Defendants failed to seek the court's permission before filing. Dkt. No. 107 at 1. However, the Special Master disregarded Combier's supplemental declaration "with one insignificant exception, contained in my discussion of claim term one,"[2] and also disregarded passages in Plaintiffs' responsive claim construction brief highlighted by Defendants as relying on the supplemental expert declaration. *Id.* at 2. In addition, the Special Master disregarded sections 1 and 3 of Defendants' reply, Dkt. No. 97, but did not disregard section 2 of the reply, discussing mixed method-apparatus indefiniteness, that was raised during the *Markman* hearing. *Id.* He deemed there no prejudice to Plaintiffs and considered that argument on the merits. *Id.*

### ii.  Plaintiffs' Objections

Plaintiffs object to the Special Master disregarding Combier's supplemental declaration but considering Defendants' reply submission, that they contend was also submitted outside the Scheduling Order and without leave of court. Dkt. No. 109 at 16-17. While Plaintiffs do not argue

---

[2] The Special Master noted Combier's Supplemental declaration agreed a polygon is a "closed, multisided, two-dimensional shape formed by a finite number of straight sides." *Id.* (citing Combier's supplemental declaration, Dkt. No. 95-1).

either filing was required to be considered as a matter of right, they assert discretion was exercised selectively, without explaining why Plaintiffs' supplemental expert declaration was disregarded while Defendants' reply was allowed. *Id.* at 17. Plaintiffs request the court consider their responsive filing to the same extent Defendants' supplemental arguments were considered, or disregard both. *Id.*

### iii.   Defendants' Reply

Defendants' reply to Plaintiffs' objections (Dkt. No. 112) did not respond to this issue.

### iv.   Court's Analysis

The court has considered Combier's supplemental expert declaration and Defendants' reply when ruling on these objections. Although Defendants assert the supplemental expert declaration was untimely under the scheduling order, their reply was also untimely and not contemplated by the operative scheduling order. In addition, the court can see why Plaintiffs believed a supplemental declaration would be allowed when it was submitted, as the Amended Scheduling Order provided that responsive *Markman* briefs should be filed with "any supporting materials, including expert declarations." Dkt. No. 75 at ¶ 2(k).

Specifically, on *de novo* review of the "side(s)" issue, the court considered Combier's declaration that a POSITA would understand "side(s)" and "side portions" could encompass non-straight sides. Dkt. No. 95-1 at ¶¶ 4-6, 8. In addition, the court considered Combier's opinion on rounding. *Id.* at ¶ 13. Also discussed in the declaration were indefinite terms, including the argument that the "filled configuration" requires a step of filling the bag. *Id.* at ¶ 10. This was considered in the discussion of indefiniteness, below in Part 2c. The court also considered Defendants' reply arguments that the Combier declaration should not be considered and the mixed-

method apparatus rendered claims indefinite. Dkt. No. 97. Because there were no objections regarding mixed-method apparatus indefiniteness, the court did not analyze de novo this theory of indefiniteness, but has reviewed for clear error.

### 2. *Defendants' Objections*

#### a. Claim Term Four[3] - "attains the maximum possible square area and volume for the perimeter of a fabric bulk bag having unrestrained sidewalls."

##### i. Report and Recommended Ruling

The Special Master construed this term to mean "attains the maximum possible square area and volume for the perimeter given the nature of the bag—a fabric bulk bag filled with loose and movable particles and unrestrained sidewalls." Dkt. No. 107 at 9. The Report found both parties attempted to rewrite the claim terms with their proposed construction, but his definition "remains true to the claim language but adds context that should dispel any confusion of what is claimed." *Id.* at 10.

##### ii. Defendants' Objection

Defendants object to this construction, arguing the Report "impermissibly rewrites unambiguous claim language about the 'material' in the claimed bag." Dkt. No. 108 at 5. They "request that the Court clarify that the proper construction is: 'attains the maximum possible square area and volume for the perimeter given the nature of the bag—a fabric bulk bag and unrestrained sidewalls.'" *Id.* at 7.

---

[3] This claim term is referenced as "R&R Section 5, Claim Term 4" by Defendants.

14

### iii. Plaintiffs' Reply

Plaintiffs assert Defendants now request the court to construe this term according to its plain and ordinary meaning. Dkt. No. 110 at 2. They also note the Special Master's language does not render "filled" indefinite. *Id.* They contend, as they did in prior briefing, that the plain and ordinary meaning of the language of the term is clear on its face, and no construction is necessary. *Id.* at 5.

### iv. Special Master's Clarification/Amendment

Based on Defendants' request for clarification, the Special Master issued a clarification and amendment to his Report and Recommended Ruling. Dkt. No. 113. He addressed Claim Term Four[4] and amended his construction to read as follows: "attains the maximum possible square area and volume for the perimeter given the nature of the bag – a fabric bulk bag and unrestrained sidewalls." *Id.* at 2. He found the specification did not support a more limited description of the product or material. *Id.* The parties were provided five business days to file objections to this clarification/amendment.

### v. Plaintiffs' Objection

Plaintiffs filed an objection to the clarification/amendment. Dkt. No. 114. While they do not object to the amended construction, to the extent it follows a plain meaning construction of the term, they do object to any interpretation of the Special Master's statement to mean the

---

[4] The Special Master referred to this term as Claim Term Five in the clarification/amendment. Dkt. No. 113 at 2. However, it is referred to as Claim Term Four in the original Report, in Defendants' objections, and Plaintiffs' reply. Plaintiffs acknowledged this discrepancy in their objection to the clarification/amendment. Dkt. No. 114 at 1 n.1. The court will continue to refer to this term as Claim Term Four.

15

specification does not support the plain meaning of "material" in the claims. *Id.* at 2-3. They assert the plain meaning of "material" encompasses loose and movable product or particles. *Id.* at 4.

vi.   Defendants' Reply

Defendants did not file an objection or a reply to Plaintiffs' objection.

vii.   Court's Analysis

The court finds  the plain and ordinary meaning of Claim Term Four is appropriate and adopts the construction of the Special Master's supplemental Report - "attains the maximum possible square area and volume for the perimeter given the nature of the bag – a fabric bulk bag and unrestrained sidewalls." Dkt. No. 113 at 2. No party appears to object to this plain and ordinary meaning construction. As for Plaintiffs' objection to the extent "material" is not given its plain and ordinary meaning encompassing loose and movable product or particles, the court finds no party requested the court construe "material" – this construction relates to the term "filled." The Special Master has removed "material" or "loose and movable particles" from his construction of Term Four. For these reasons, the court declines to further construe "material."

b.   *Indefinite Term Ten: "Operable"*

i.   Report and Recommended Ruling

Indefinite Term 10 is that the bag has a "sidewall operable to prevent 'leaning or sagging' or variations thereof." Dkt. No. 107 at 20 The Report defined the plain and ordinary meaning of "operable" as "capable to." *Id.* (citing *Info-Hold, Inc. v. Applied Media Techs. Corp.,* 783 F.3d 1262, 1265 (Fed. Cir. 2015)).

16

### ii. Defendants' Objections

Defendants do not object to this term defined in this way in the context of claims regarding "leaning or sagging." Dkt. No. 108 at 7. However, if the construction of "operable" as meaning "capable to" applies to *all* claims, Defendants object. They specifically object to such a construction in claims reciting "operable to have a plurality of bulges." *Id.* at 8 (citing '155, claim 10(d); '693, claim 1(d), 7(d); '540, claim 8(d)). They assert in four independent Asserted Claims, "operable" is used to recite more than mere capability, but a structural requirement. They contend Plaintiffs' prosecution-history statements foreclose defining "operable" as mere capability, as Plaintiffs disavowed capability language. *Id.* at 9.

### iii. Plaintiffs' Reply

Plaintiffs replied supporting the Report's construction that operable means capable to, following Federal Circuit precedent and the intrinsic record. Dkt. No. 110 at 11. They contend Defendants' arguments asserting Plaintiffs disavowed this definition should be stricken as not previously raised; but even if not stricken, these arguments fail on the merits as "operable" is functional language detailing a characteristic of the bag. *Id.* at 11-15.

### iv. Court's Analysis

"Operable" was defined by the Special Master as "capable to," consistent with its plain and ordinary meaning and Federal Circuit precedent. Defendants object, not to the claim construed (regarding "leaning or sagging"), but to the extent this definition applies to claims that the bag is "operable to have a plurality of bulges."

The Federal Circuit has held "[w]e apply a presumption that the same terms appearing in different portions of the claims should be given the same meaning unless it is clear from the

17

specification and prosecution history that the terms have different meanings at different portions of the claims." *Paragon Sols., LLC v. Timex Corp.*, 566 F.3d 1075, 1087 (Fed. Cir. 2009). However, there is no *requirement* a claim term be construed uniformly, especially when it would lead to a "nonsensical result." *Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367, 1376 (Fed. Cir. 2008); *see also Aventis Pharms. Inc. v. Amino Chemicals Ltd.*, 715 F.3d 1363, 1374 (Fed. Cir. 2013) (noting the court "previously held the same claim term can have different constructions depending on the context of how the term is used within the claims and the specification.").[5]

Accordingly, there may be a presumption that "operable" means "capable to" in the claims that the bag is "operable to have a plurality of bulges." However, "operable" may be interpreted to have a different construction depending on how the term is used within the claim, and if there are distinctions in context and usage between "operable to prevent leaning or sagging" and "operable to have a plurality of bulges." At this point in the litigation, there are outstanding factual issues that preclude the court from making a definitive ruling on a term that was not previously requested to be construed, and which has not gone through the rigorous claim construction process.

Defendants contend the patentee's prosecution history statements essentially disavow a construction of "operable" as "capable to," because statements made in prosecution require bulging sidewalls – not mere capability to bulge. However, the court finds bulging sidewalls are

---

[5] For example, the term "substantially" has been construed by the Federal Circuit to have different interpretations based on a "subtle but significant difference" in context and usage. *Epcon Gas Systems, Inc. v. Bauer Compressors, Inc.,* 279 F.3d 1022 (Fed. Cir. 2002).

mentioned as a feature of the bag, rendering it functional language. Accordingly, the statements in the prosecution history as referenced by Defendants do not rise to the level of disavowal.

### c. Claims regarding "Geneva-style" Indefiniteness

Defendants contend the asserted claims with functional language to claim the result of "filling" the bag are indefinite because the outcome of filling is dependent on unclaimed variables. Dkt. No. 108 at 11. Because the Claims did not claim the fill material, Claims related to "bulging," "rounded perimeter," "circular perimeter," "support structure," lack of "leaning or sagging," and "columns of unsupported" material/product all depend on the type of fill material used, extent of filling, degree of compaction, extent of settling, and other unclaimed factors, according to Defendants. *Id.* at 12.

### i. Report and Recommended Ruling

The Report determined "filled configuration" does not require a step of filling the bag by a user, and a POSITA would understand to a reasonable certainty that the filled configuration terms focus on the capabilities of the bag, not specific actions by the user, and would therefore know with reasonable certainty when infringement attaches. Dkt. No. 107 at 13-14. Further, the Report noted "unfilled" should be given its plain and ordinary meaning, and a POSITA would understand a filled configuration relates to its condition once in use. *Id.* at 14. The Special Master found none of the claims suffered from *Geneva*-style indefiniteness.

### ii. Defendants' Objections

Defendants objected to these findings with regard to the claims with "bulge limitations" and other result-oriented limitations. Dkt. No. 108 at 17-18. They assert the same bulk bag could simultaneously infringe and not infringe depending on the fill material used, the degree of filling,

19

and handling conditions – therefore, a POSITA could not determine the scope of the claims with reasonable certainty and the claims are indefinite. *Id.* at 19.

### iii.  Plaintiffs' Reply

Plaintiffs contend Defendants' *Geneva*-style indefiniteness argument is improperly raised, as it is a new argument after the Special Master's Report. Dkt. No. 110 at 15. They also submit the argument fails on the merits, as the language is focused on the structure of a filled bag, which can be evaluated without knowledge of the material with which the bag is filled. *Id.* at 20. They assert Defendants have failed to prove indefiniteness by clear and convincing evidence. *Id.* at 24.

### iv.  Court's Analysis

#### 1.  Timeliness

Plaintiffs contend Defendants' *Geneva* indefiniteness arguments are improper because they were not raised until after the Special Master issued his Report and Recommended Ruling. As noted above, the court recognizes District Court cases holding a party cannot raise new arguments after the Special Master has issued a report because to allow that would frustrate the purpose of a Special Master's review and would be fundamentally unfair. *See, e.g., Net2Phone,* 2008 WL 8183817, at *4 (holding de novo determination "does not require the reviewing court to hear new arguments," because "systematic efficiencies would be frustrated" and it would be fundamentally unfair to permit a litigant to set its case in motion . . . and – having received an unfavorable recommendation – shift gears before the reviewing judge"). The court agrees Defendants had an opportunity to raise *Geneva*-based legal arguments in Claim Construction briefing, but failed to do so, raising other arguments related to indefiniteness.

20

However, there is Fourth Circuit law holding parties may raise new arguments in their objections to a Magistrate Judge's Report and Recommendation, but not new issues. *See Samples*, 860 F.3d at 272-73. Although *Samples* dealt with review of a Magistrate Judge's Report, not a Special Master's report, the principles of a District Judge's review are similar. *Compare* § 636 ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions."), *with* Fed. R. Civ. P. 53(e)(1) ("In acting on a master's order, report, or recommendations, the court must give the parties notice and an opportunity to be heard; may receive evidence; and may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions.").

The court finds Defendants should have raised their *Geneva*-style arguments regarding indefiniteness at the first opportunity, in their claim construction briefing. It frustrates the purpose of a Special Master to review his findings and then alter arguments to raise a new theory. However, in an abundance of caution and given Fourth Circuit law, the court will consider the new *Geneva* arguments on the merits.

2. Legal Principles

A claim is indefinite if its legal scope is not clear enough that a person of ordinary skill in the art could determine whether a particular composition infringes or not. *See* 35 U.S.C. § 112 (2000). The test for indefiniteness is whether the claims, viewed in light of the specification and prosecution history, "inform those skilled in the art about the scope of the invention with

21

reasonable certainty." *Nevro Corp. v. Bos. Sci. Corp.*, 955 F.3d 35, 41 (Fed. Cir. 2020) (citing *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014)). However, the test is not merely whether a claim is susceptible to differing interpretations. "Such a test would render nearly every claim term indefinite so long as a party could manufacture a plausible construction." *Id.* Definiteness does not require that a potential infringer be able to determine *ex ante* if a particular act infringes the claims – terms are indefinite only if a POSITA could not determine infringement at any time. *Id.* at 40. The competitor has the burden of proving indefiniteness by clear and convincing evidence. *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017) (citing *Nautilus*, 783 F.3d at 1377).

In *Geneva Pharms., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1384 (Fed. Cir. 2003), the Federal Circuit held claims indefinite when a POSITA could not determine whether a proposed construction "might infringe or not depending on its usage in changing circumstances," calling this "the epitome of indefiniteness."

A "functional limitation" is defined by "what it does rather than what it is." *Nevro*, 955 F.3d at 39. Functional terms, however, are not inherently indefinite. Functional language may "promote[] definiteness because it helps bound the scope of the claims by specifying the operations that the [claimed invention] must undertake." *Cox Commc'ns*, *Inc. v. Spring Commc'n. Co., LP*, 838 F.3d 1224, 1232 (Fed. Cir. 2016). The ambiguity inherent in functional terms may be resolved where the patent "provides a general guideline and examples sufficient to enable a person of ordinary skill in the art to determine the scope of the claims." *Nevro*, 955 F.3d at 39.

3. Application

Defendants have failed to prove by clear and convincing evidence the claims that recite bulges and bulging ('973, claim 7(e); '155, claims 10(d), 22(d)–(e), 23(d)–(e), 25(c); '693, claims 1(d), 7(d), 14(d)–(e); '540, claims 1(e)–(f), 8(d), 14, 15(d), 18(a), 18(c), 20(d)–(e); '798, claims 1(b)–(c), 10(e), 15(c)) are indefinite. These claims assert the bags have sidewalls that bulge when in a "filled" configuration. The court agrees with the Special Master a POSITA would understand "bulges" to be functional language that are objectively assessable when the bag is filled, no matter the material. It is not required that a POSITA be able to determine whether the bag infringes prior to the filling of the bag. *See Nevro*, 955 F.3d at 40. In addition, this functional language helps define the scope of the claims by specifying the operation the bag must undertake – for these claims, bulging sidewalls.

As for the other "result-oriented limitations" Defendants assert are indefinite under *Geneva*, the court also finds Defendants have failed to prove indefiniteness by clear and convincing evidence. Claims reciting the sidewall forms a "rounded shape," a "circular shape," "a perimeter that is at least substantially circular," "a circular perimeter," "support structure," a lack of "leaning or sagging," and columns of unsupported" material or product upon filling are similar to those above reciting "bulge" and "bulging" in that they are functional language. The court therefore finds Defendants have not proved these claims ('973, claim 7(c); '155, claims 10(b), 10(d), 12, 22(b), 23(b), 23(d), 25(c); '693, claims 1(b), 7(b), 7(d), 10, 14(b); '540, claims 1(d)–(e), 8(b), 8(d), 11, 14, 15(c), 18(c), 20(c); '798, claims 1(b)–(d), 5, 9, 10(c)–(e), 11, 15(c)–(d), 16) are indefinite.

23

### 3. *Portions of the Report to which Objections were Made*

The court has reviewed the Special Master's Report and Recommended Ruling, and has analyzed de novo the portions to which objections were made. The court finds as follows:

a. The court has considered Plaintiffs' supplemental expert declaration of Phillipe Combier (Dkt. No. 95-1) as well as Defendants' reply (Dkt. No. 97).

b. "Side(s)" is not limited to straight sides only, and is construed to be defined as the plain and ordinary meaning, or the claim language; in the alternative, "side(s)" is defined as one or more of the line segments that together define the bag bottom. "Side(s)" can be straight or non-straight.

c. "The shape of the bottom has rounding" is not indefinite.

d. The Special Master's amended construction Claim Term Four, "attains the maximum possible square area and volume for the perimeter given the nature of the bag - a fabric bulk bag and unrestrained sidewalls," is an appropriate plain and ordinary meaning construction and is hereby adopted by the court. "Material" will not be further construed, as it was removed from the construction of Claim Term Four.

e. Indefinite Term Ten, "Operable," the court construes as "capable to" in the term defined, that the bag has a "sidewall operable to prevent leaning or sagging, or variations thereof." There is a presumption that "operable" also means "capable to" in the claims that the bag is "operable to have a plurality of bulges," and that presumption has not currently been overcome.

f. No terms are found to be indefinite under *Geneva*.

24

### 4. *Portions of the Report to which No Objections were Made*

The court has reviewed the portions of the Report to which no objections were made for clear error. Finding none, the court adopts those portions of the Report. These include the Special Master's claim construction of (1) bottom of bag having "at least six sides" or "at least four sides" and variations thereof; and (2) bag bottom "having a shape that is neither a circle nor a square" and variations thereof; and determinations that the following terms are not indefinite: "filled configuration"; "unfilled configuration"; bag is "supported by" or "fits on" a pallet and variations thereof; "substantially straight support structure" and variations thereof; "fabric sidewalls bulging outward along a vertical midpoint"; "bulge portions" in relation to "the bottom" or "support surface" and variations thereof; "sidewall" having a "rounded" or "circular perimeter"; "bottom" having a "surface area" or "footprint" greater than unclaimed bag and variations thereof; "shape of the bottom" is adapted to prevent "bulge portions" from "making contact with a support surface" and variations thereto; "sidewall is adapted to expand while being filled" without restraining "bulge portions" and variations thereof.

### 5. *Conclusion*

For the reasons above, the court adopts in part and declines to adopt in part the Report and Recommended Ruling of the Special Master.

**IT IS SO ORDERED.**

s/Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
June 5, 2026

25